

United States District Court
For The Southeastern District of North Dakota
Fargo Division

| United States of America, | ) Crim. No. 3:02-cr-47-01 |
| Respondent, | ) Civil No. 3:07-cv-100 |
| | ) |
| v. | ) Amended Motion To Vacate |
| | ) The Court's Judgment (Doc. |
| Michael Gerald Gamboa, | ) No. 461) Pursuant To Federal |
| Movant. | ) Rule of Civil Procedure 60(b)(6) |

Comes now the Movant, Michael Gerald Gamboa, pro se, and moves the Court to vacate the Court's Judgment (Doc. No. 461), denying the Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence, Pursuant to Federal Rule of Civil Procedure 60(b)(6).

## Law and Argument

1. On 29 May 2012, the Court received the Movant's "Motion To Vacate The Court's Judgment (Doc. No. 461) Pursuant To Federal Rule Of Civil Procedure 60(b)." Id. Docket No. 491.

2. On 27 June 2012, the Court held a hearing on the related issue concerning the Movant's claim of docket manipulation.

3. During the hearing, which the Court stated was <u>NOT</u> an evidentiary hearing, the Fargo Federal Court Clerk's Office authenticated the Movant's docket sheet indicating that the Movant's Original, paper format, U.S.D.C. File was returned to the U.S. District Court on 20 December 2008. See Docket No. 491, <u>id.</u> Exhibit No. 2.

4. Despite Claiming the hearing was <u>NOT</u> an evidentiary hearing, the Court, in effect, Conducted an evidentiary hearing by receiving sworn testimony on issues in dispute and permitting both the U.S. Attorney and the pro se Movant to examine the witness under oath.

5. The Movant objected to the hearing on the grounds that he had not received any prior notice of the hearing. Cf. Federal Rule of Civil Procedure 6(d).

6. The Movant was <u>NOT</u> afforded Counsel once the hearing transformed into an evidentiary hearing.

2

7.   Following the receipt of testimony, the Court engaged the Movant on issues of "prejudice" and "due diligence."

8.   Following the hearing, the Court entered an Order directing the Movant to supplement the record on the issue of due diligence. See Docket No. 496.

9. The Court's Order highlights deficiencies in the Movant's pleading, to wit: (a) the pleading's failure to plead & prove "due diligence," and (b) the pleading's failure to state the precise provision of Federal Rule of Civil Procedure 60(b) invoked. Id.

10. Based upon the alleged deficiencies, and because no responsive pleading has been received from the Respondent, the Movant submits his "Amended Motion To Vacate The Court's Judgment (Doc. No. 461) Pursuant To Federal Rule of Civil Procedure 60(b)(6)." See Federal Rule of Civil Procedure 15(a). This pleading is intended to address the deficiencies indicated.

3

11. For all intents and purposes, the Movant incorporates herein as if fully set forth verbatim his previous Rule 60(b) motion and attached exhibits. See Docket No. 491.

12. Addressing the Court's allusion to the applicability of Federal Rule of Civil Procedure 60(b)(1) or 60(b)(2) - and, hence, a 1-year time limitation - the Movant submits the Court is mistaken in its deduction and reasoning.

13. First, the Movant's previous Motion qualified that "Rule 60(b)'s applicable provisions do not contain express time-limits on the bringing of such a motion . . ." Id. Docket No. 491, Page 1, ¶2 through Page 2, ¶1. Thus, it is axiomatic that the Movant had invoked everything but Rule 60(b)(1), (2) and (3).

14. Second, the Movant's previous motion was qualified on the basis of the fact that he was challenging the "district Court's previous resolution of a 28 U.S.C. § 2255 claim on 'procedural grounds.'" Id. Docket No. 491, Page 1, ¶1. Such claims are raised,

4

appropriately, under Federal Rule of Civil Procedure 60(b)(6) because they do not challenge the merits. Gonzalez v. Crosby, 545 U.S. 524, 538 2005.

15. To be clear, the Movant asserts he is proceeding under Federal Rule of Civil Procedure 60(b)(6) and that there is NOT, therefore, a 1-year time limit made applicable to this case.

16. Because the Movant's motion is brought pursuant to Rule 60(b)(6), the applicable time component requires the Movant to establish his motion was made within a "reasonable" time. Id.

17. In examining even stricter time-limitations than that provided by Rule 60(b)(6), the Supreme Court has held that "[t]he diligence required for equitable tolling purposes is a habeas case is 'reasonable' diligence, NOT maximum feasible diligence." See Holland v. Florida, 560 U.S. _____ (2010) (internal quotations and emphasis added).

5

18. Before addressing the merits of the instant motion, or otherwise addressing due diligence, the Movant would address applicable standards of review and/or principles of law that must color the Court's consideration of the instant motion.

19. First, the Movant was given multiple life sentences, another life sentence consecutive thereto, with an additional thirty-year sentence running consecutively to the two. See Docket No. 417. Thus, where the Movant challenges a legal ruling (albeit on procedural grounds) affirming these severe sentences, "[i]n discussing equitable considerations [the Court] Cannot ignore the fact that lifetime imprisonment under a mistaken legal ruling is a 'quintessential miscarriage of justice.'" See Carnell v. Nix, 119 F.3d 1329, 1333 (8th Cir. 1997) (modified, internal quotations not in original).

20. Consistent with Paragraph 19, supra, the law of this Circuit demands that Rule 60(b) "should be 'liberally construed' when substantial justice will thus be served." See Carnell v. Nix, supra, at 1332 (internal quotations added).

6

21. This liberal construction was discussed in Holland v. Florida, 560 U.S. ___ (2010), when the Court stated: "In emphasizing the need for flexibility, for avoiding mechanical rules, Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946), we have followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threatens the evils of rigidity, Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248 (1944). The flexibility inherent in equitable procedure enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices." Id.

22. Secondly, the Court's consideration of the instant motion is colored by the fact that the Movant seeks to vacate the Summary Dismissal of his first and only 28 U.S.C. § 2255 Motion. That is, "[d]ismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections

7

of the Great Writ entirely, risking injury to
an important interest in human liberty. "
See <u>Lonchar v. Thomas</u>, 517 U.S. 314, 324 (1996).

23. In light of the aforementioned standards of
review and/or principles of law, the Movant
asserts the Court's Order summarily dismissing
his First 28 U.S.C. § 2255 motion remains
a vehicle of injustice, in that, that <u>such
has denied him a full and fair opportunity
to access the Great Writ</u> (albeit via 28 U.S.C.
§ 2255) entirely. For the reasons stated herein
below, Rule 60(b)(6) is the appropriate vehicle to
use to remedy this injustice because the
issue presented (See Doc. No. 491, <u>id</u>. Exhibit
No. 2) could <u>not</u> have previously been
presented during the anterior collateral
proceedings and any direct appeal therefrom.
See <u>Murphy v. Missouri Dept. of Corrections</u>,
506 F.3d 1111, 1117 (8th Cir. 2007)(quoting <u>Harley v.
Zoesch</u>, 413 F.3d 866, 870 (8th Cir. 2005)("Relief
available under 60(b)(6) when exceptional circumstances
have denied the moving party a '<u>full and fair</u>' opportunity
to litigate his claim and have prevented the moving
party from receiving adequate redress").

24. In the case at bar, the Movant's 28 U.S.C. § 2255 motion was filed on 13 November 2001. See Docket No. 436. The motion was NOT initially decided by the Court due to a pending appeal. See Docket No. 448 (quoting United States v. Curry, 328 F.3d 970, 972 (8th Cir. 2003)(holding that a frivolous double jeopardy challenge does not divest the district court of jurisdiction, while a "colorable" challenge does).

25. The Movant's 28 U.S.C. § 2255 motion presented forty-seven (47) distinct and separate factual allegations supporting over seventy (70) distinct and separate legal claims for relief. See Docket No. 436.

26. The District Court, making reference to the Movant's § 2255 motion and case, characterized such as "expansive and intricate," but held the Court was NOT required to address "every single complaint raised by bamboo." See Docket No. 463, id. Page 2. See, however, Clisby v. Jones, 960 F.2d ___ (11th Cir. 1992)(district court must address every claim).

9

27.  While certainly "expensive and intricate," <u>the motion presented numerous claims predicated upon occurrences outside the courtroom</u> and upon which the "record" could, therefore, cast no real light.  Indeed, while the motion presented claims predicated entirely upon occurrences outside the record, <u>the alleged circumstances were **not** of the kind that the Court could completely resolve by drawing upon its own personal knowledge.</u>  Thus, this case fell within the purview of <u>Machibroda v. United States</u>, 368 U.S. 487, 494-495 (1962) (dismissal improper without expansion of record).

28.  In fact, to be sure the Movant's § 2255 motion presented claims predicated upon occurrences outside the record and beyond the knowledge of the Court, the Movant addresses, <u>for context only</u>, the particulars surrounding Claim 46 of his 28 U.S.C. § 2255 motion.  See <u>Exhibit A</u>.

29.  Claim 46 of the Movant's § 2255 motion alleges his attorney was burdened by an "actual" conflict of interest.  <u>Id</u>.  The factual bases for the claim concretely establish that such

occurred extrajudicially during attorney-client visits. Due to the circumstances alleged and the privileged nature of attorney-client communications, it is an unquestionable certainty that such a claim exists outside the scope of any trial-court record and beyond any personal knowledge of the Court. See Exhibit A.

30. Because neither the record nor judicial knowledge could cast any light on the credibility of the claim - which the Movant noted in Claim 46 would be proven by the Clay County Correctional Center's Visitor's Logs and James D. Hovey's cell phone records - the Movant motioned the Court for an Order compelling the production of records essential to the Court's resolution of this claim. See Exhibit B (Docket No. 444). In doing so, the Movant established that neither James D. Hovey or the Clay County Correctional Center would voluntarily surrender these records. See Exhibit B; See also Exhibit C (Expanded Record No. 8 - James D. Hovey refusing to provide records).

31. Thus, to provide context to the instant claim, the Movant draws a Compelling

analogy between <u>Machibroda</u>, supra, and the case at bar. In particular, <u>Machibroda</u> held that: "[28 U.S.C. § 2255] requires a District Court to grant a prompt hearing when such a Motion is filed, and to determine the issues and make findings of fact and conclusions of law with respect thereto unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. This was not the case where the issues raised by the motion were conclusively determined either by the motion itself or by the files and records in the trial Court. The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the governments response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection. [] We cannot agree with the government that a hearing in this case would be futile because of the apparent lack of any eyewitnesses to the occurrences alleged, other than the

12

Petitioner himself and the Assistant United States Attorney. The Petitioner's motion and affidavit contain charges which are detailed and specific. It is not unreasonable to suppose that many of the material allegations can either be corroborated or disproved by the visitors' records of the County jail where the Petitioner was confined, the mail records of the penitentiary to which he was sent, and other such sources. Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the Petitioner has carried his burden of proof and shown his right to discharge." Machibroda, supra, at 494-495.

32. In the case at bar the Court summarily dismissed without the benefit of any record, existing or otherwise, and without even merely requiring the government to respond pursuant to Habeas Rule 4, which itself establishes a relatively low burden to be satisfied before compelling the government to do so. Thus, where the instant case mirrors Machibroda in nearly every respect, the Court was required to provide the Movant's claim greater consideration, NOT LESS. In fact, the

<u>Machibroda</u> Court observed that it was not
enough to compel a government response,
<u>Something the Court did not even do here.</u>

33. As the Movant maintains, the Court failed
to consider the requisite records as mandated
by statute and rule. See 28 U.S.C. § 2255
and Habeas Rule 4. Denying, summarily, the
Movant's <u>First</u> § 2255 motion without any
<u>expanded record</u> under these circumstances
is itself a denial of the Great Writ altogether.
Summarily denying the Movant's <u>First</u>
§ 2255 motion without considering the records
and files of the previous proceedings only
galvanized, and now highlights, the resulting
miscarriage of justice. It was, after all, the
Movant's right to be heard upon the entire records
and files of the prior proceedings and any other
records that, by necessary extension, should have
been brought within the record. See <u>Walker v.</u>
<u>Johnston</u>, 312 U.S. 275, at 287 (    ).

34. Therefore, where the Movant seeks relief
from Judgment (Doc. No. 461) via (Rule 60(b)(6),
reopening the Judgment would <u>NOT</u> be in

14

vain because many of the Movant's § 2255 claims,
indeed all of them, have, effectively, never
been considered in light of the record on
which he is entitled to be heard. Many
such claims, like Claim 46, are alleged to have
occurred outside the scope of any records,
files, or judicial knowledge. See, for example,
Claim No. 4 (Exhibit D) and Amended Claim 44 (Exhibit E).

35. Thus, when the Movant asks this Court for
equitable relief via Rule 60(b)(6), it is imperative
for the Court to understand exactly what the
Movant is asking of this Court.

36. First, the Movant is NOT asking the Court
to grant him any substantive relief that
would, say, free him of the conviction and
sentence imposed in this Court. Such a
windfall is neither requested or expected here.

37. Second, while the Movant has highlighted
aspects of the underlying § 2255 claims for
contextual purposes, the Movant is NOT
asking the Court to dispositively rule on
his § 2255 itself.

38. Instead, the Movant is asking the Court to merely vacate the denial of the § 2255 Motion and conduct a new Habeas Rule 4 examination where it can be positively determined that the § 2255 motion's examined in light of the "records and files" of the prior proceedings. This is an appropriate procedure, in light of the aforementioned standards of review and/or principles of law, if the Court has even a single lingering doubt concerning the propriety of the procedure followed in this case.

39. Indeed, following vacatur of Judgment (Doc. No. 461), this Court could examine the § 2255 motion, any attachments and expanded record, and the "records and files" of the prior proceedings and determine, pursuant to Habeas Rule 4, the § 2255 Motion is again subject to summary dismissal.

40. Whatever the Court's Habeas Rule 4 disposition may be, it is not until such is conducted with the benefit of the

16

records and files of the prior proceedings that
the Movant will have received his "Full" and "Fair"
Opportunity to be heard consistently with due
process and this Court's statutorily mandated
duty. See 28 U.S.C. § 2255 (b); See also Habeas
Rule 4 (b).

41.  Turning Now to the availability of relief under
Rule 60(b), the Movant notes for the Court
that Rule provides two (2) separate and
distinct time-to-file provisions — each with
its own triggering event.  That is, generally,
Rule 60(b) provides relief from "Final"
Judgments.  Id. Rule 60(b) ("[T]he court may
relieve a party ... from a 'Final' judgment); See
also Gonzalez v. Crosby, 545 U.S. 524, 529 (2005)
("[Rule 60(b)(6)'s] whole purpose is to make an
exception to 'Finality.' ").

42.  The time-to-file provisions are written
in the disjunctive, and apply differently depending
upon the provision invoked. For example, Rule
60(c) qualifies that "the motion must be made
within a 'reasonable' time," while disjunctively
qualifying " and for reasons (1), (2) and (3), No

more than a year after 'entry' of the judgment
or Order or the date of the proceeding." Id.

43. Accordingly, the "reasonable" time period
Commences upon "finality" of the judgment
under attack, while the 1 year time-to-
file period commences with the "entry" of
the judgment under attack. See Advisory
Committee Notes to the 1995 Amendment of
Rules 52 and 59 (describing affect on "Finality"
of judgments); See also Gonzalez v. Crosby, 545
U.S. 524, 542 at n.4 (2005)(separate opinion
concurring in part and dissenting in part)(Noting
Artuz v. Bennett, 531 U.S. 4 (2000) was decided only seven
months after Petitioner's judgment became "final"),
and Gonzalez v. Crosby at 527 (noting that
seven months prior to Artuz v. Bennet the
Petitioner's petition for rehearing was denied by
the 11th Circuit Court of Appeals, thus imposing
"Finality" on judgment).

44. The Supreme Court has also held that "Finality"
occurs when a timely filed petition for a writ of
certiorari is decided, or when the time for taking
certiorari expires. See Clay v. U.S., 537 U.S. 522,
525 (2003).

18

45. That the "reasonable time" period runs from the time of the "finality" of the judgment under attack is consistent with limits placed upon this Court's jurisdiction.

46. First, Federal Rule of Civil Procedure 60(a) limits this Court's equitable jurisdiction once a notice of appeal is taken from judgment and docketed with the Court of appeals. Id. The Court's continuing jurisdiction is then limited to the correction of errors clerical in nature.

47. Second, the filing of a notice of appeal is a jurisdictional event that divests the Court of jurisdiction to entertain any post-judgment motion during the pendency of any appeal. See United States v. Curry, 328 F.3d 970, 972 (8th Cir. 2003).

48. Because the Movant is seeking relief pursuant to Civil Rule 60(b)(6), the "reasonable time" within which he brings his motion is guaged from the vantage point of finality achieved only after the conclusion of the post-judgment appeal process.

49. In the case at bar, the Movant appealed the judgment under attack to the 8th Circuit Court of Appeals. See Exhibit F, Appeal No. 09-1781 Docket. On 20 October 2009 the Court denied the Movant's appeal. Id. On 07 December 2009, the Movant timely sought rehearing, which was denied on 08 January 2010. Id.

50. Pursuant to Supreme Court Rule 13.3, the Movant had 90 days from 08 January 2010 to take certiorari. Pursuant to Rule 13.3, the time to take certiorari expired on 08 April 2010. Pursuant to Clay v. United States, Supra, the judgment became "Final" at that time. It is from this date that the reasonable time to file a motion under Rule 60(b)(6) commenced.

51. Before moving on to discuss due diligence and the Movant's diligent efforts to bring his Rule 60(b)(6) motion, the Movant makes (2) two critical points the Court should understand before addressing due diligence.

20

52.  First, while the Movant establishes the "reasonable time" period for Rule 60(b)(6) purposes commenced on 08 April 2010, he wants the Court to understand he did <u>NOT</u> wait until such time to pursue his claim.[1] Instead, the Movant articulates all efforts immediately undertaken to develop the issue presented, as so stated herein below.

53.  Second, this Court should understand that the issue presented here was <u>NOT</u> ripe in time to have raised it via a post-judgment, pre-appeal motion to the Court. Because the collateral proceedings had otherwise concluded, the time to file a notice of appeal had commenced. As such, the time to file the notice of appeal in this case would have expired before the Claim presented here ripened for review.

54. Thus, where this Court lost equitable jurisdiction under Civil Rule 60(a) and general jurisdiction

21

---

[1] All claims made herein are submitted under the penalty of perjury, 28 U.S. §1746, as being true and correct. This pleading, therefore, constitutes the Movant's Affidavit in support of his Rule 60(b)(6) Motion.

under Curry, supra, once the Movant's notice of appeal was docketed, and where the appeals Courts will NOT entertain a claim not raised in the district court, the Movant was precluded from either raising the claim in the District Court or in the Eighth Circuit Court of Appeals. Accordingly, the claim now presented could not have been presented until the appellate proceedings concluded and jurisdiction was returned to the Court.

55. Ripeness: The claim presented here centers upon the Movant's claims that he did NOT receive a plenary review of his 28 U.S.C. § 2255 claims that, in accordance with Congress' statutory mandate under § 2255(b) and Habeas Rule 4(b), required the Court to conduct a de novo review of the prior records and files of the proceedings and then, after considering the motion, exhibits and any expanded record, determine whether the record before the Court makes it "plainly apparent" that the Movant was entitled to no relief.

56. Doubts as to the Movant's receipt of

22

plenary review first manifested themselves when the Movant timely[2] filed his Rule 52(b) motion to the Court requesting findings of fact and conclusions of law because: (1) the Court discussed the application of a statute literally having nothing to do with the Movant's § 2255 pleading (as if his review was cursory at best), and (2) the Order of denial was nearly devoid of any record citations. See Docket No. 462, id. Page 9, n.2; See also Page 10, ¶11. Doubts, however, do not establish facts.

57.   On 12 January 2009, the Movant requested a complete docket sheet from the Clerk's Office. See Exhibit G (letter dated 12 January 2009); See also Docket No. 464.

58.   On or about 01 February 2009, the Movant received the requested docket sheet dated 26 January 2009. See Exhibit H. This docket sheet, previously

---

[2] It is worth noting for the Court that the Movant has NEVER, in ten years of pleading (6 of them pro se), not complied with a filing deadline or otherwise taken a lackadaisical attitude towards the pursuit of his rights.

Submitted to the Court as docket No. 491,
id. Exhibit 2, was authenticated under oath
by Todd E. Dudgeon of the Clerk's Office
during the 27 June 2012 hearing held by
the Court.

59.  Exhibit H established that, consistent
with the Movant's doubts as to his receipt
of plenary review of his § 2255 motion,
the prior "records and files" of his case were
not returned until after the Court denied
the Movant's § 2255 motion.

60.  The Movant viewed this record as
consistent with the Court's issuance of an
opinion articulating the application of a
statute having nothing to do with the
Movant's case or § 2255 motion and,
indeed, consistent with the Court's
issuance of an opinion almost entirely
devoid of record citations alleged to refute
the Movant's legal claims.  See Docket
No. 462

61.  However, the Movant was not yet

aware what, exactly, the Court was required to consider before ruling on the Movant's § 2255 Motion[3] and, more importantly, before presenting any claim the Movant had to be sure that no other record was available to the Court for the purpose of conducting plenary § 2255 review.

62. Before the Movant could resolve the open questions, supra, and thereby determine the presence or absence of a non-frivolous claim, the institution within which the Movant is confined experienced a riot on 26 January 2009. As a result, the entire institution went on 24-hour lockdown for a month or more and did NOT resume "normal operations" until March of 2009. During any lockdown period inmates are: (1) NOT allowed to leave their assigned cells, (2) NOT permitted access to law library facilities, (3) NOT permitted to access legal records required to be kept in storage (B.O.P. Policy

---

[3] whether required by statute, rule or under prevailing Eight Circuit and/or Supreme Court case law.

permits inmates to keep only a fraction of their files in their cells due to fire hazards and such records must be rotated to and from storage), (4) not permitted to use other legal facilities (i.e. typewriters and etc.), (5) are permitted showers 1-2 times weekly, and (6) otherwise are not permitted to purchase paper and mailing stamps which are limited for security reasons (because stamps, for example, may be used as illicit currency).[4]

63. While the Movant could not conduct any legal research as a result of the intervening lock down, he nonetheless remained

---

[4] The institution within which the Movant is confined is a High Security U.S. Penitentiary. As such, the institution has spent anywhere from 25% to as much as 40% of any given year on institutional lock down and/or on non-normal operations. Because such has severely hindered the Movant's ability to prepare and present his Rule 60(b)(6) motion, the Movant moves the Court to exclude all such time under equitable tolling principles to the extent that such time should NOT be counted against the "reasonable time" within which the Rule 60(b)(6) motion shall be deemed to have been filed. The Movant has filed a Freedom of Information Act request seeking the official record manifesting the number of days/weeks/months actually spent on lock down. However, because it will likely take months for the Movant to independently obtain these records, the Movant moves the Court separately for an Order compelling their disclosure by the F.B.O.P.

diligent by doing the only thing he could do. That is, the Movant, on 23 February 2009, inquired as to the existence of other records the Court could have used to conduct a plenary § 2255 review and whether there were any Local Rules concerning how a district court file is maintained. See Exhibit I. (Docket No. 468). The Movant explained that such was "beyond[his] knowledge and understanding." Id.

64. On 27 February 2009, the Clerk's Office responded indicating: (1) No, there was NO other file available to the Court, and (2) that for case filings predating November 2005 (such as the majority of the Movant's case files) were maintained in paper format only. (Thus precluding their electronic availability via PACER). See Exhibit J (previously submitted as docket No. 491, id. Exhibit No. 1).

65. Having received Exhibit J on or about 03 March 2009, and following the return to normal operations, the Movant could NOT research the legal aspects of

27

his claim and present a Rule 60(b)(6) or
any other post-judgment motion while preserving
his right to appeal. That is, because more
than (10) ten days had passed since
judgment the Movant could <u>not</u> file a Rule
59(e) motion, and because any Rule 60(b)(6)
motion would be filed beyond (10) days of
judgment, it would <u>NOT</u> equitably toll the
time provided for notice of appeal. See
Federal Rule of Appellate Procedure 4(a)(4)(A)(vi).
The Movant's other post-judgment motions had
been decided and thereby commenced the
time to appeal.


66. In any event, the institution, after
returning to normal operations, was immediately
placed back on lock down — thus precluding
the Movant from developing the <u>legal bases</u>
for his claim. The Movant had no choice
but to timely submit his notice of
appeal on 20 March 2009. See <u>Exhibit
K</u> (filing delayed due to Flooding). The letter
accompanying the Notice of Appeal notes
that, due to lock down, the requisite copies
could not be submitted to the Court. <u>Id.</u>
¶ 2.

28

67. As noted supra, once the notice of appeal was filed in this case: (1) "Finality" of judgment was arrested, (2) the Court lost equitable jurisdiction to address <u>substantive</u> claims via Rule 60(b) due to the restrictions imposed by Rule 60(a), and (3) the Court lost its jurisdiction, generally, pursuant to the binding 8th Circuit holding in <u>United States v. Curry</u>, 328 F.3d 970, 972 (8th Cir. 2003).

68. With the taking of appeal, the Movant's employment of due diligence focused primarily, although not exclusively, on prosecuting his appellate rights. (Attacking the § 2255 judgment in the Court of Appeals) Due to numerous intervening lock downs, the Movant would not get to submit his request for a COA, but would have his notice of appeal construed as such.

69. While prior to appeal the Movant had begun to ripen his claim for review, it is noted here that the claim had suffered an unripening because the Clerk's office had, inexplicably, altered the

29

docket (no doubt in response to Exhibit I)
to reflect that the record was returned,
NOT (8) Eight days after the Court's § 2255
ruling as the First-existing record manifested
(See Exhibit H), some (11) Eleven days prior.

70. In light of the docket discrepancy, the
Movant now had to establish: (1) whether the
docket change was lawful, (2) why it was
changed when it had remained unchanged
for so long (i.e. was it changed in response to
Exhibit I calling attention to Exhibit H?),
(3) that Exhibit H is authentic, and (4)
which now, of the two docket variations, is
legally binding upon the Court. Compare
Exhibit H with Exhibit L (altered docket).

71. The § 2255 appeal process resulted in the
denial of COA (10/20/09), a timely researched and
presented petition for rehearing (filed 12/07/09)
and a denial of the petition for rehearing.
(rehearing denied 1/08/10). See Exhibit F.

72. Having (90) ninety days to contemplate
a petition for a writ of certiorari pursuant

30

Supreme Court Rule 13.3, the Movant's due diligence, with respect to his challenging the Court's § 2255 judgment, led him to thoroughly explore the feasibility of challenging the judgment via a petition for a writ of certiorari to the United States Court of Appeals for the Eighth Circuit.

73. Because the Movant's contemplated certiorari petition would have necessarily been predicated upon erroneous factual findings and the misapplication of properly stated rules and laws, the decision to NOT present a writ of certiorari was made because Supreme Court Rule 10 "rarely" provides for review on those bases. Id. The time to file for certiorari expired on 08 April 2010.

74. The Movant's efforts now exclusively focused on Rule 60(b)(6) relief. However, because the Movant could not undertake certain endeavors to answer questions surrounding the validity of his claim (see ¶70, supra), the decision to seek counsel was made.

31

75.  On 04 April 2010, just days prior to the expiration of the time to petition the Supreme Court for certiorari, the Movant contacted Attorney Jeff Bredahl for: (1) representation on a Rule 60(b)(6) motion (NOT Rule 60(b)(1) or (2)), (2) to develop the claim (compare Exhibit M, id. Pages 3-4, infra, with ¶ 70, supra) based upon (3) the claim now presented. See Exhibit M (Letter to Attorney Jeff Bredahl dated 04 April 2010) (Privileged information redacted in part).[5]

76.  On 15 April 2010, Attorney Jeff Bredahl responded to the Movant's request by First stating he had a conflict of interest and he could not, therefore, represent me, and stating secondly that he recommended I contact attorney Ross Brandborg — an attorney to whom he referred cases.  See Exhibit N.

77.  Coming from a trusted attorney under high praise, the Movant forwarded his records

[5] Jeff Bredahl was the Movant's attorney in a previous Federal Court case before he represented the Movant's brother, Edward Gamboa.

(his only set of records, in fact, because lock downs precluded the making and sending of copies) to Ross Brandborg believing, in good faith, the attorney would act professionally in all things.

78. After repeated efforts to see if Ross Brandborg would accept representation, and having received no response thereto, the Movant began efforts to retrieve the file so that he could use such to seek alternate counsel. The file, after pressuring Ross Brandborg for its return, was returned on or about 13 July 2010.

79. Feeling the Rule 60(b)(6) motion was time-sensitive, and believing Ross Brandborg's unreasonable retention of the file prejudiced the Movant's cause, the Movant filed an ethics complaint with Paul Jacobson, Disciplinary Counsel of the North Dakota State Supreme Court. See Exhibit O. (Noting time-sensitivity and potential prejudice).

80. Meanwhile, and following the return of

33

the Movant's records on 13 July 2010, the Movant
began the process of seeking alternate
Counsel.

81. The Movant first sought "Yellow Page" listings
for all local attorneys from the Movant's Unit
Counselor. The Movant's request was denied
because the provision of such was "not
permitted." (The Movant complained to the
Unit Counselor's superiors which should be
documented with F.B.O.P. authorities)

82. Following the above, the Movant asked
his Family members and Joyce Barkowski
to copy and send me the "Yellow Page" listings
for all attorneys. Neither responded for
approximately (2) two months, (or more).

83. It is approximated that in mid-September 2010
Joyce Barkowski (co-defendant's Mother) provided
the Movant with photocopies of the "Yellow
Pages" listing the advertisements for criminal
defense attorneys.

84. No longer willing to surrender his records,

the Movant began submitting a form letter
requesting representation.

85.   On 30 September 2010, Ross Brandberg
executed an affidavit under oath stating
the Movant's contemplated Rule 60(b)(6) motion
was NOT time-sensitive.  See Exhibit P, id.
¶ 7.


86.  Considering Ross Brandberg's statement was
made under oath and submitted to a body
of attorneys charged with regulating the
conduct of licensed, practicing North Dakota
attorneys, the Movant reasonably doubted,
now, that his contemplated Rule 60(b)(6) was
in fact time-sensitive.  Notwithstanding these
doubts, his diligent efforts continued.


87.  Following the Movant's submission of form
letters requesting representation ( See ¶ 84, Supra),
the Movant experienced the following over
a period of months: (1) some lawyers declined
my request for representation, (2) some lawyers
stated they had conflicts and could not,
therefore, represent me, and (3) the rest

35

failed to respond at all. Based upon the inability
to obtain counsel, the Movant was compelled
to continue to develop the factual and legal
bases for his claim pro se.

88. Around November and December 2010, the
Disciplinary Board ratified Ross Brandborg's
position and found he had not committed an
ethics violation. This galvanized the Movant's
belief that his Rule 60(b)(6) motion was
NOT time-sensitive, per se.

89. Remaining diligent, and to resolve open
questions as to the merits of the Movant's
claim (see ¶ 70, supra); the Movant wrote
the Clerk's office to determine how docket
changes occur, and under what authority
docket maintenance occurs. See Exhibit Q.

90. In response, the Clerk's office submitted
its letter indicating, changes to the docket
"would be reflected on the docket sheet of the
impacted case." See Exhibit R. After
some consideration it was determined that,
while helpful, the Clerk's response did NOT

36

particularly answer "How" a docket change would be reflected on the docket sheet of an impacted case. See Exhibit Q, id. ¶1 (referencing question as to "codes" used to reflect docket entries "entered in error," "corrected" or "modified.")

91. Due to the lack of a particular answer, the Movant again consulted the Clerk's office. This time the Movant received his requested response articulating, with specificity, what is particularly required of a legal docket change. See Exhibit S (Dated 06 June 2011).

92. In light of this information, the Movant established Exhibit H existed prior to the existence of Exhibit L (comparing dates) and that Exhibit L represents a change of Exhibit H, Exhibit L must, therefore, possess a code indicating: (1) a change to the docket occurred, (2) why it occurred, and (3) when it occurred. Examining Exhibit L it was now known at this point that the Clerks office had not complied with either local Rules or statutory mandate. See Exhibit T (referencing statutory mandate).

37

93.  Driving ahead from this point, the Movant
began to conduct extensive research concerning
not only the basic principles surrounding the
availability of relief under Rule 60(b)(6), but
the more complex interactions of Rule 60
(b)(6) with 28 U.S.C. § 2255. For example,
the Anti-Terrorism and Effective Death Penalty
Act of 1996 may restrict Rule 60(b)(6) relief
whereas the Court's "equitable jurisdiction"
may expand the availability of relief
under Rule 60(b)(6). Compare Gonzalez v. Crosbal,
supra, with ¶¶ 18-22, supra.(explaining competing
standards of review).

94. The Movant's efforts to present his claim
required extensive research and preparation because
his bases for relief are legally complex and
factually intricate.

95. During the research and preparation
periods, going all the way back to January
of 2009, it is imperative to note that
in addition to experiencing numerous lock downs
lock downs (see n.4, supra), the Court should
understand that the Movant's opportunities

to research and prepare legal pleadings are severely limited even during "Normal operations."

96. That is, because the Movant is in a High Security U.S. Penitentiary, all inmate movement is strictly controlled. To explain this, the Movant first advises that the prison cells are opened at 6:00 a.m. Between 6:00 a.m. and 7:30 a.m., inmates are given enough time to bathe, clean their cells, attend breakfast and be prepared to depart for their assigned prison job at 7:30 a.m. The prisoner remains at his assigned location until 10:30 a.m. recall. At such time, he awaits his Unit being called for the noon meal. After the noon meal, he reports back to his Unit. At 1:00 p.m. (more or less) he reports back to his assigned work duty. At 3:10 p.m. (more or less) he reports back to his Unit. He is given until 3:45 p.m. (more or less) to bathe and report back to his cell for stand up count. (Conducted after 4:00 p.m.). Count clears (anywhere between 4:45 and 5:30 p.m.) and inmates are released in their Units to await their Unit being called to the evening meal. The evening meal

Concludes and a "recreation move" is conducted
at 6:30 (rarely on time) and such presents
the first opportunity to access law library
facilities (usually flooded due to limited
computer terminals). The law library closes
at around 7:25 p.m. and recall occurs at
around 8:00 p.m. The exception to these
movements is that the law library never
opens Friday after 4:00 p.m. Count and
never opens on Sunday.

97. The Movant, being employed, cannot
participate in legal activities during the
daytime hours. That is, if the Movant
refuses to work or is not at a scheduled
job location during the prescribed time
he faces disciplinary action. As such,
when this Court assesses the Movant's
due diligence, it should not overestimate
the scant opportunities to conduct legal
research and preparation — scant opportunities
further complicated by repeated lock downs
and that such brings.

98. Notwithstanding these obstacles, the

40

Movant continued his diligent efforts through legal research.

99. The Movant, on 26 July 2011, sought a protective order over the electronic file. See Exhibit U. The Court waited nearly (11) eleven months to act on the request.

100. On 15 February 2012, while the Movant was at the law library finalizing his Rule 60(b)(6) motion, the Movant was assaulted and placed in Administrative Segregation. The Movant was NOT charged with any disciplinary infraction and was wholly innocent in the incident.

101. Upon being placed in the Secure Housing Unit, the Movant was denied access to his legal documents unless he could prove he had a "current" case. The Movant wrote the Clerk for a "current case" letter but received no response. See Dockets Nos. 488 & 489. Again, the Movant was diligent.

41

102. Upon gaining access to his legal property, it was learned prison officials failed to secure a portion of his legal work. That portion of the Movant's Rule 60(b)(6) motion (unfinished draft) remains lost. See Exhibit V. Indeed, to gain access to legal property (portions NOT lost), the Movant was forced to refuse to leave the Secure Housing Unit Recreation Cages (the Movant was threatened with force and gassing) until his demand for his legal materials was honored. (May be confirmed through Lt. Tipton, Officer Wright, Officer Garcia and Officer Hauszer).

103. Since being in the Secure Housing Unit, the Movant has only been given approximately (4) four hours of law library time (in nearly 5½ months).

104. Based upon the foregoing, the Court should exclude all time from 15 February 2012 until the filing of the Rule 60(b)(6) motion on 29 May 2012.

105. Additionally, the Court should consider the Movant's necessity of expending time to address, via a § 2241 petition, the Supreme Court's decision in United State v. O'Brien, 130 S. Ct. 2169, 176 L. Ed. 2d 979 (2010), that effectively overruled the Movant's life sentence and consecutive 30-year sentence for machineguns. See Barbosa v. Warden, Case No. 5:11-cv-202-Oc-26 8AJ (Mid. Dist. of Florida).

106. Based upon the foregoing particulars, the Court should find that the Movant exercised "reasonable" diligence as "maximum feasible diligence" is NOT required. See Holland v. Florida, supra, at 417.

107. The Movant has shown that, when given the opportunity, he diligently pursues his rights. Even now the Movant submits this motion long before the 25 September 2012 deadline set by the Court.

108. The Court has received evidence

43

on the peripheral issue of alleged illegal docket maintenance. The fact that questions concerning this docket maintenance remain establishes that, even now, the issue is not ripe for conclusive resolution of the questions raised. (see ¶70, supra).

109. In any event, the Movant stands before the Court with the following questions: "What evidence is in the record?" and "does that evidence militate in favor of the record being returned on 12/20/08 (as manifested by _Exhibit H_), or does the evidence militate in favor of the record being returned on 12/01/08 (as manifested by Exhibit L)?"

110. If the former, the Movant has _NOT_ been given plenary § 2255 review and the summary dismissal of his _First_ and _only_ § 2255 motion results in the denial of the Great Writ altogether.

111. If the latter, the Movant would be hard-pressed to make the showing of the denial of his constitutional rights.

44

112. Examining the evidence in support of each docket entry, then, the Movant argues the following:

a. If the Movant possessed the docket version indicating the record was returned <u>after</u> the Court was required to consider it, <u>but the Court's Memorandum Opinion and Order denying his §2255 motion was **NOT** conspicuously devoid of record citations</u> (see Doc. No. 462), then the evidence would militate in favor of the accuracy of the docket version indicating the record was returned <u>prior</u> to the Court's Memorandum Opinion and Order. Because the Memorandum Opinion and Order is devoid of such record citations, the evidence supports the accuracy of the docket version (<u>Exhibit H</u>) indicating the record was returned on 12/20/08 — <u>after</u> it was required to be considered.

b. The fact that the Court, in its Memorandum Opinion and Order, spoke authoritatively about the proper application of a statute <u>NOT</u> applicable and/or applied in the Movant's case supports the conclusion that the docket version (<u>Exhibit H</u>) indicating

45

the record was <u>NOT</u> in the Court's possession
when it issued its Memorandum Opinion
and Order.

   C. The accuracy of the docket version
(<u>Exhibit H</u>) indicating the record was <u>NOT</u>
returned until after the Court issued its
Memorandum Opinion and Order is supported
by the Court's resolution of Claims <u>NOT</u> Capable
of being decided on the basis of the record
or Judicial Knowledge. See <u>Exhibits A, B</u>
<u>and C</u>. Had the Court possessed the record,
it would have known the Court was
incapable of dispositively ruling upon
them.

   d. Militating <u>against</u> the docket
version (<u>Exhibit L</u>) indicating the record
was returned before the Court's Memorandum
Opinion and Order is, <u>in addition to the</u>
<u>above</u>, the fact that such does <u>not</u>
comport to the Court's Local Civil Rules,
the Local Criminal Rules, and the Statutory
Rules on docket maintenance. The docket
entry, altered from the Original as it
was, is and remains illegal.

46

113. The Court should grant relief because to Not do so would allow doubts as the Movant's receipt of plenary § 2255 review to linger unresolved on such an important matter as a first § 2255 motion.

114. Again, the Movant is NOT asking the Court for substantive relief, per se. See ¶¶ 35-39, Supra.

115. The Movant is serving multiple life sentences under an erroneous legal ruling. Such is a quintessential miscarriage of justice. See Nix, Supra. He requests his right to be heard upon the record to which he is entitled.

## Conclusion

Wherefore this motion should be granted. Submitted under the penalty of perjury, 28 U.S.C. § 1746, on this 26th day of July, 2012. (all claims & Exhibits are true and correct).

_Michael_____

47

Certificate of Service

I hereby certify opposing Counsel
has been served with

1. Amended Motion To Vacate The
Court's Judgment (DOC. No. 461) Pursuant
To Fed. R. Civ. Proc. 60(b)(6)

2. Motion To Compel The Production
of Records.

26 July 2012