# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:02cr47-PDW** |
| | ) | **Hon. Peter D. Welte** |
| | ) | |
| **MICHAEL GERALD GAMBOA,** | ) | |
| *Defendant.* | ) | |

## DEFENDANT MICHAEL GAMBOA'S REPLY IN RESPONSE TO THE GOVERNMENT REGARDING HIS NOTICE OF SUPPLEMENTAL AUTHORITY, ECF NO. 690

The Government's opposition to Mr. Gamboa's *pro se* Supplemental Notice of Authority (ECF No. 690) is riddled with inaccuracies. Most notable among these is the Government's attempt to cabin the broad discretion granted to the courts when considering "other reasons" that may warrant a reduced sentence into a very narrow set of circumstances that the Sentencing Commission did not intend. Furthermore, the Government incorrectly claims that Mr. Gamboa's arguments in support of a sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(5) are more suitable to a motion pursuant to 28 U.S.C. § 2255. Finally, the Government asks the Court to completely reject the persuasive authority for no other reason that it was filed pro se, notwithstanding the fact that nothing in the court rules mandates such a conclusion.

MICHAEL GAMBOA, by his counsel JACQUELYNE PHELPS of The Decarceration Collective Law Office, respectfully presents this Reply in Response to the Government regarding Mr. Gamboa's Notice of Reliance on Supplemental Authority, Docketed at ECF No. 690.

1

# I.    DISCUSSION

As a threshold matter, the Government correctly notes that "a district court has no obligation to entertain pro se motions filed by a represented party." *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001). However, nothing suggests that a court is forbidden from considering a defendant's pro se filing. That is particularly true where, as here, there is no conflict between the filing and any advice or filing counsel would provide. Therefore, the Court can and should consider Mr. Gamboa's pro se Notice of Reliance on Supplemental Authority.[1]

Nevertheless, the Government asks this Court to deny Mr. Gamboa's Motion to File his Supplemental Notice of Authority solely based on the fact that it was filed pro se. ECF No. 697, p.2. However, **A.**  The Government's attempt to cabin the Court's broad discretion under U.S.S.G. § 1B1.13(b)(5) misreads and misstates the intent and purpose of that section. Furthermore, **B.** The Government's framing the issue as better suited to a motion brought pursuant to 28 U.S.C. § 2255 has been squarely rejected by multiple district and circuit courts. Finally, **C.** The Court can and should consider the totality of the circumstances as set forth in Mr. Gamboa's motion-in-chief, reply, subsequent supplements, and his supplemental notice of authority.

**A.    The Government's attempt to cabin the Court's broad discretion under U.S.S.G. § 1B1.13(b)(5) misreads and misstates the intent and purpose of that section.**

---

[1]    In the alternative, undersigned counsel adopts and incorporates fully by reference Mr. Gamboa's pro se filing.

The Sentencing Commission specifically and unambiguously stated that determining "what circumstances or combination of circumstances are sufficiently extraordinary and compelling" is "best provided by the reviewing court, rather than through an effort by the Commission to predict and specify in advance all of the grounds on which relief may be appropriate."[2] The Commission's reasoning makes sense. When viewed through the lens of congressional intent, it is clear that Congress *always* expected that district courts would be the final arbiters of whether, and by how much to reduce a defendant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). That much is evident by the fact that the purpose of eliminating parole and enacting Section 3582(c)(1)(A) was to "keep[] the sentencing power in the judiciary where it belongs, yet permit[] later review of sentences in particularly compelling situations." S. Rep. No. 98-225, at 121 (1983).

The Commission wisely knew that it "could not possibly identify the myriad extraordinary and compelling reasons that might warrant a sentence reduction." *United States v. Cromitie*, No. 09cr558, 2024 WL 216540, at *5 (S.D.N.Y. Jan. 19, 2024). That is why the "catchall provision" codified at U.S.S.G. § 1B1.13(b)(5) "maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release." *United States v. Smith*, No. JKB-12cr479, 2024 WL 733221, at *2 (D. Md. Feb. 21, 2024).

---

[2]    U.S. Sent. Comm'n, *Amendments to the Guidelines* Apr. 27, 2023, available at: https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf, p. 5 (referencing S. Rep. No. 98-225 (1983)) (last accessed Aug. 11, 2025).

The *Johnson* court explained that reasoning in considerable detail. There, the court noted that "[t]he catchall provision, however, does not restrict a district court's broad discretion" and, to the contrary, "allows for consideration of reasons that are *similar in gravity* to those enumerated in the policy statement[.]" *United States v. Johnson*, 778 F. Supp. 3d 997, 1005 (C.D. Ill. 2025) (internal quotation marks and citation omitted). Moreover, as the court explained, the Commission's specific choice to utilize the phrase "similar in gravity" expressly rejected any notion that the reasons need to be "similar in nature and consequence to the specified circumstances in [the first four] categories." *Id.* (quoting *United States v. Moreira*, No. 06cr20021, 2024 WL 378032, at *3 (D. Kan. Jan. 31, 2024).

The *Johnson* analysis is particularly relevant in this case. Mr. Gamboa, like Mr. Johnson, noted several circumstances that would necessarily result in a very different outcome, were he being sentenced today. (*See, e.g.*, *United States v. O'Brien*, 560 U.S. 218 (2010); *United States v. Owen*, 51 F.4th 292 (8th Cir. 2022)). These cases "did not establish new law"; rather, they represent "a re-interpretation [] of *existing* law." *Id.* at 1006 (emphasis in original). As the Eighth Circuit has previously explained, these decisions did not "change[] the law" but are "at most an incremental development in the law, not a departure from established principles." *Khafaji v. Bondi*, No. 23-3551, 2025 WL 518024, at *2 (8th Cir. Feb. 18, 2025) (unpublished) (internal quotation marks and citation omitted). Therefore, "although the impact [of these cases] considered in isolation may not be sufficient to establish an extraordinary and compelling reason for release, on the facts of this case, it is a factor that weighs in favor of such a finding." *Johnson*, 778 F. Supp. 3d at 1008.

**B.    The Government's argument that Mr. Gamboa's claims relating to intervening developments in the law is better suited to a motion pursuant**

**to 28 U.S.C. § 2255 has been rejected by multiple district and circuit courts.**

The government's attempt to reframe Mr. Gamboa's argument as a collateral attack on the validity of his sentence is misplaced. Mr. Gamboa is not attacking his conviction, nor is he attacking the validity of his sentence. Instead, Mr. Gamboa argues for the first time that Section 3582(c)(1)(A) allows the Court to consider intervening developments in the sentencing landscape as part of its overall calculus.

There is a crucial distinction between a motion brought pursuant to 28 U.S.C. § 2255 and one brought pursuant to 18 U.S.C. 3582(c)(1)(A). The key is that "although both a defendant-filed motions for sentence reduction and a habeas petition may each result in an inmate's early release from custody, the two require different showings and carry different implications about the defendant's original conviction and sentence." *United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023).

Similarly, in *United States v. Jean*, the Fifth Circuit rejected the exact same arguments that the government urges the Court to adopt. 108 F.4th 275 (5th Cir. 2024). The court explained that there is "a distinction between a reason that is unique in its own right and a reason that is unique when applied to a particular defendant." *Id.* at 286. Moreover, and contrary to federal habeas jurisprudence, consideration of intervening developments in the law doe not "*require* district courts to find that compassionate release is warranted[.]" *Id.* at 287 (emphasis in original).

In other words, one of the key differences between a habeas motion and a compassionate release motion turns largely on discretion. That is because "[t]he Supreme Court's habeas-channeling jurisprudence 'has focused on the need to ensure that state

prisoners use only habeas corpus [] remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.'" *Id.* at 1102-03 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in *Wilkinson*). By contrast, "because the court's disposition of a compassionate release motion is discretionary, not mandatory, granting such a motion does not imply that the original sentence was unlawful." *Id.* at 1103 (internal quotation marks and citation omitted).

| 28 U.S.C. § 2255 | 18 U.S.C. § 3582(c)(1)(A) |
|---|---|
| (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.<br>(b) Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.<br>(c) A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.<br>(d) An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.<br>(e) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also | (c) Modification of an imposed term of imprisonment.-- The court may not modify a term of imprisonment once it has been imposed except that--<br>(1) in any case--<br>(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--<br>(i) extraordinary and compelling reasons warrant such a reduction; or<br>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);<br><br>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.] |

| | |
|---|---|
| appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.<br>(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--<br>(1) the date on which the judgment of conviction becomes final;<br>(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;<br>(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or<br>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.<br>(g) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.<br>(h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--<br>(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or<br>(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. | |

As shown, there is little—if any—overlap between the procedures and the remedies available under Section 2255 vis-à-vis Section 3582(c)(1)(A). Section 2255 has many restrictions; Section 3582(c)(1)(A) has very few. Section 2255 has limitations on the number of times it may be utilized; Section 3582(c)(1)(A) has none. Section 2255 contains a temporal limitation; Section 3582(c)(1)(A) may be invoked at any time. Section 2255 contains a mandate that the court "*shall vacate*" a sentence if it is found in violation of the law or the constitution and requires immediate release; Section 3582(c)(1)(A) is wholly discretionary. Relief under

Section 2255 cares not for prison records, rehabilitation, or policy statements; Relief under Section 3582(c)(1)(A) is wholly dependent on those factors.

In short, Mr. Gamboa "does not seek 'to correct sentencing errors.'" *Roper*, 72 F.4th at 1102 (quoting *United States v. Jenkins*, 50 F.4th 1185, 1201 (D.C. Cir. 2022)). Nor is he in this procedural posture challenging his conviction or sentence. Instead, Mr. Gamboa "seeks to invoke the sentencing judge's discretion to reduce his sentence, presenting an amalgamation of circumstances," some of which include changes to the sentencing landscape that have occurred since the time he was tried, convicted, and sentenced. *Id.* And unlike Section 2255, it is wholly within the Court's broad discretion to consider those factors as they relate to the totality of the circumstances as intended by U.S.S.G. § 1B1.13(b)(5).

**C.    The Court can and should consider the arguments set forth in Mr. Gamboa's supplemental authority as part of the totality of the circumstances which warrant a reduction in sentence.**

It should be noted that there is not a single argument Mr. Gamboa raises in the supplement that is not directly relevant to his motion-in-chief, his reply, or his previous supplements. And yet the Government would have this Court reject Mr. Gamboa's filing for the simple reason that it was filed pro se—notwithstanding the fact that the authority cited therein is relevant, well-reasoned, and provides strikingly similar arguments to the ones Mr. Gamboa advances. That argument should be categorically rejected.

In reality, Mr. Gamboa has advanced a number of arguments in favor of reducing his life sentence. Although those arguments include some changes in the law and some intervening developments in the law, his reasons for reducing his sentence rely only partially

on those arguments. On the contrary, Mr. Gamboa presents the Court with a unique constellation of circumstances which are entirely his own.

Chief among those reasons is the fact—plain and simple—the Mr. Gamboa has *earned* a reduction in sentence. Mr. Gamboa has survived more than two decades in some of the most dangerous and violent environments that most people can only imagine. He has seen "inmates shot from the tower, or stabbed, or beaten to death."[3] He has experienced medical trauma, including a COVID-19 infection that nearly claimed his life and the resulting and likely permanent damage as result of that infection. Indeed, this Court has already acknowledged that "it is apparent that Gamboa suffers from serious medical issues." ECF No. 647, p.4. Now, Mr. Gamboa is confined at FCC Butner II, where there are "numerous accounts of inmates" who are "funnel[ed] [] to a place like Butner, where it is assumed they'll receive more specialized treatment."[4] However, "by the time prisoners access more advanced care," it's sometimes too late to do much more than palliative care."[5]

Despite these circumstances, Mr. Gamboa shines bright. He is not surviving—he is thriving. He "has taken it upon himself to tell his story and put life lessons in those stories" through his Letters of Hope and Healing, his collaboration with North Dakota's F5 Project.[6]

---

[3]    C.S. Hagen, *Inforum*, "Meth kingpin says he's gone from 'drug dealer to hope dealer'," Aug. 7, 2025, available at: https://www.inforum.com/news/the-vault/meth-kingpin-says-hes-gone-from-drug-dealer-to-hope-dealer (last accessed Aug. 11, 2025) (also attached at Exhibit A).

[4]    Defender Services Office, "25% Inmate Deaths Happens In One Federal Prison," available at: https://www.fd.org/news/25-inmate-deaths-happens-one-federal-prison (last accessed Aug. 11, 2025).

[5]    *Id.*

[6]    Statement of Adam Martin, founder, F5 Project, *Inforum*, "Meth kingpin says he's gone from 'drug dealer to hope dealer'," Aug. 7, 2025, available at: https://www.inforum.com/news/the-vault/meth-kingpin-says-hes-gone-from-drug-dealer-to-hope-dealer (last accessed Aug. 11, 2025).

In short, Mr. Gamboa demonstrates remarkable rehabilitation, which shines through his actions as well as his words. He is *precisely* the type of person Congress intended to benefit from 18 U.S.C. § 3582(c)(1)(A).

## II.    CONCLUSION

> *Can you show courage*
> *And stay in the fire until*
> *You find the blessing?*

–Catharine Larson, "Tapas: Self-Discipline"[7]

There is a profound sincerity about Mr. Gamboa's commitment to himself and, by extension, his commitment to others. He has survived the fire of his own life experience. Like the controlled burn of a crucible, that fire burned away that which did not and does not serve him until nothing now remains but a pure product: the truth of his past, the commitment to his present, and the unlimited potential of his future. Mr. Gamboa has shown courage in the fire, and he has found the blessing.

This Court stands in a uniquely powerful position. Congress granted the Court broad discretion to consider any number of factors which may warrant reducing Mr. Gamboa's sentence. The Court need not choose one or another; but rather the totality of the circumstances which in tandem amount to extraordinary and compelling reasons. That is exactly the approach the *Johnson* court took, regardless of any change in the law. Indeed, *Johnson* provides a compelling blueprint for motions brought pursuant to U.S.S.G. § 1B1.13(b)(5). Therefore, the Court can and should consider Mr. Gamboa's pro se supplemental notice, and the persuasive authority from the Central District of Illinois as outlined in *Johnson*.

---

[7]    Deborah Adele, *The Yamas & Niyamas*, 111 (2009)

Respectfully Submitted,

/s/*Jacquelyne Phelps*

Jacquelyne Phelps
The Decarceration Collective Law
Office
P.O. Box 720183
Oklahoma City, OK 73172
Tel: 312-858-8334
Email: jacki@decarcerationlaw.com
*Pro Hac Vice Counsel for Defendant Michael Gamboa*

## CERTIFICATE OF SERVICE

I, Jacquelyne Phelps, an attorney with The Decarceration Collective Law Office, hereby certifies that I filed the foregoing on August 11, 2025, with the Clerk of the Court via the CM/ECF system.

Respectfully Submitted,

/s/Jacquelyne K. Phelps
JACQUELYNE K. PHELPS

The Decarceration Collective Law
Office
P.O. Box 720183
Oklahoma City, OK 73172
Tel: 312-858-8334
Fax: 312-626-4823
jacki@decarcerationlaw.com

*Pro Hac Vice Counsel for Michael Gamboa*